| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Return Date: July 11, 2013<br>at 2:00 p.m. |

-----------------------------------------------------------------

In re:                                                                                          Chapter 11

PARK SIDE ESTATES, LLC                                                   Case No. 13-22198 (RDD)

                                        Debtor.

-----------------------------------------------------------------

## DEBTOR'S SUPPLEMENTAL MOTION FOR FINAL FINANCING ORDER AUTHORIZING BORROWING WITH PRIORITY OVER ADMINISTRATIVE EXPENSES AND SECURED BY LIENS ON PROPERTY OF THE ESTATES PURSUANT TO SECTION 364(C) OF THE BANKRUPTCY CODE

TO:    THE HONORABLE ROBERT D. DRAIN,
          UNITED STATES BANKRUPTCY JUDGE

        PARK SIDE ESTATES, LLC, the debtor and debtor-in-possession (the "Debtor") herein, by its attorneys, Robinson Brog Leinwand Greene Genovese & Gluck P.C., hereby submits this supplemental motion (the "Supplemental Motion") pursuant to section 364(c) of title 11 of the United States Code (the "Bankruptcy Code") seeking authority to obtain secured post-petition financing in the form of an up to $300,000 loan (including interim amounts) from Classon Estates V, LLC, ("Lender"), an affiliate of its secured creditor, Classon Estates LLC, ("Classon"), successor in interest to the Debtor's mortgage lender, The Community Preservation Corporation ("CPC"), and respectfully represents:

### JURISDICTION AND VENUE

        1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This application has been referred to this Court for consideration pursuant to section 157 of the United States Code and the *Standing Order of Reference Regarding Title 11* (S.D.N.Y. Feb. 1, 2012) (Preska, C.J.). This is a core proceeding

13-22198-rdd    Doc 58    Filed 06/26/13    Entered 06/26/13 17:45:54    Main Document
Pg 2 of 19

pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is section 364(c) of the Bankruptcy Code.

## BACKGROUND

2. On February 7, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Except pursuant to the Receiver Stipulation (as defined below), the Debtor has continued in possession of its property and the operation and management of its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtor is a limited liability company that owns the real properties and improvements thereon commonly known as 143 and 159 Classon Avenue, Brooklyn, New York 11205 (the "Properties").

4. The Properties are two (2) partially completed apartment buildings with commercial units and parking spaces. Construction at the Properties is incomplete. Currently, there is no rental income generated at the Properties.

5. CPC was the owner and holder of a series of construction loans made by CPC to the Debtor commencing on or about December 20, 2007 (the "Loan") pursuant to certain loan documents evidencing and securing the Loan (the "Loan Documents"). The Loan is secured by certain first priority mortgages (the "Mortgages") which encumber the Properties. CPC commenced an action to foreclose the Mortgages in the Supreme Court of the State of New York, Kings County, captioned *The Community Preservation Corporation v. Park Side Estates, LLC, et al.*, Index No. 29529/10 (the "Foreclosure Proceeding") and obtained a judgment of foreclosure dated October 25, 2012, in the

{00630656.DOC;2 }
435896/002-4195501.3                                    2

amount of $20,563,439.82, plus interest and costs accruing thereafter. Pursuant to an order dated January 23, 2012, a receiver (the "Receiver") was appointed in the Foreclosure Proceeding to, inter alia, secure the Properties and collect any rents and profits therefrom (the "Receivership").

6. On February 13, 2013, CPC filed a motion seeking entry of an order excusing the Receiver from compliance with the turnover provisions of section 543 of the Bankruptcy Code and to maintain him as Receiver of the Properties during the pendency of this chapter 11 case. On March 15, 2013, CPC and the Debtor entered into the Receiver Stipulation wherein the Receiver, inter alia, was authorized to continue as Receiver of the Properties and excused from compliance with the turnover provisions of section 543 of the Bankruptcy Code [D.I. 17].

7. On or about May 10, 2013, CPC assigned all of its right, title and interest in, among other things, the Loan, the Loan Documents, the Mortgages and the Foreclosure Action to Classon.

8. The Debtor and Classon have negotiated a resolution of the Debtor's chapter 11 case that provides for a sale of the Properties pursuant to section 363 of the Bankruptcy Code and the filing of a consensual plan of reorganization that will provide for the sale of the Properties based on the results of the auction and the distribution of the sale proceeds. An auction of the Properties and a sale hearing have been scheduled for July 9 and 11, 2013, respectively.

9. Lender, an affiliate of Classon, has agreed to finance the balance of the Debtor's chapter 11 case pending confirmation of a plan within 60 days after the entry of the sale order but not later than September 30, 2013, subject to certain terms and

conditions, including, but not limited to, the appointment of an independent third party to act as Chief Restructuring Officer for the Debtor and a DIP Budget. The Court approved the CRO Motion on June 7, 2013. The DIP Budget is attached hereto as Exhibit A.

10. On May 24, 2013, the Debtor filed the original motion seeking entry of interim and final orders approving the DIP Financing, however, the form of the proposed interim order was inadvertently not included as an exhibit to the original motion. As noted by the Court, the original motion failed to provide adequate disclosure in accordance with the local rules with respect of certain relief being requested in favor of the Lender. At the direction of the Court, after various modifications were made to the form of the interim order so that it was consistent with the relief sought in the original motion, the interim order was entered on June 24, 2013. The Interim Order specifically provided that if the Debtor intends on seeking additional protections for the Lender in the final financing order, the Debtor must file a supplemental motion.

11. The Debtor is filing this Supplemental Motion to set forth the additional protections the Debtor is requesting be approved in favor of the Lender. Debtor is serving the supplemental motion on all parties in order to provide them with an opportunity to review and participate in the process. By this supplemental motion, Debtor requests that the additional protections set forth herein be approved and included in the final financing order, a copy of which is attached hereto as Exhibit B.

### RELIEF REQUESTED

12. By this Motion the Debtor respectfully requests, pursuant to sections 105 and 364 of the Bankruptcy Code and Bankruptcy Rule 4001, the entry of a final order in the form attached hereto as Exhibit B, for, *inter alia*:

(a) authorization, under sections 364(c)(1) and (c)(3) of the Bankruptcy Code, and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the Debtor to obtain postpetition financing (the "DIP Financing") in the form of a junior secured loan in the amount of up to $300,000 (including interim amounts) from Lender to pay necessary expenses of the chapter 11 case and for maintaining and preserving the Properties as set forth in the attached budget; and

(b) authorization to grant to Lender assurances for the full and timely repayment by the Debtor of the DIP Financing, by granting to Lender (i) pursuant to section 364(c)(1) of the Bankruptcy Code, an administrative expense allowable under section 503(b) of the Bankruptcy Code having priority over any and all expenses and claims specified in any other section of the Bankruptcy Code, including, without limitation, sections 503(b) and 507(b) of the Bankruptcy Code, subordinate only to fees for the Debtor's professionals not to exceed $200,000 and fees payable to the Office of the United States Trustee (the "Carve Out"); and **a junior lien in the Properties, junior and subordinate only to Classon's Mortgages and any other valid, existing liens on the Properties.**

**Bankruptcy Rule 4001 and Local Rule 4001-2 Concise Statement**

13.    Material provisions of the DIP Order are set forth at the following sections of the DIP Order, pursuant to Bankruptcy Rules 4001(c)(1)(B)(i)-(xi) (relating to obtaining credit), Bankruptcy Rule 4001(b)(1)(B)(i)-(iv) (relating to the use of cash collateral), and the Local Bankruptcy Rules of the United States Bankruptcy Court for the

Southern District of New York (the "Local Rules") 4001-2(a)-(i) (relating to the use of cash collateral and obtaining credit):

| MATERIAL TERMS OF DIP LOAN[1] ||
|---|---|
| Borrower<br>*Bankruptcy Rule 4001(c)(1)(B)* | Park Side Estates, LLC. *See DIP Order,* ¶ 1. |
| DIP Lender<br>*Bankruptcy Rule 4001(c)(1)(B)* | Classon Estates V, LLC an affiliate of Classon Estates, LLC. *See DIP Order,* ¶ 1. |
| Use of Proceeds<br>*Bankruptcy Rule 4001(c)(1)(B)* | The DIP Financing shall be used as set forth in the Budget. *See DIP Order,* ¶ 1. |
| DIP Facility<br>*Bankruptcy Rule 4001(c)(1)(B);*<br>*Local Rule 4001-2(a)(1)* | The DIP Facility consists of a junior secured loan of up to $300,000 with administrative priority subject only to the Carve Out. *See DIP Order,* ¶ 1. |
| Maturity<br>*Bankruptcy Rule 4001(c)(1)(B)* | The DIP Financing, along with all accrued interest and expenses, will come due on the earlier of: (a) the effective date of a plan of reorganization or (b) September 30, 2013 (the "Expiration Date"). *See DIP Order,* ¶ 1. |
| Fees<br>*Bankruptcy Rule 4001(c)(1)(B);*<br>*Local Rule 4001-2(a)(3)* | The Debtor has agreed to an origination fee of 2% of the Authorized Amount under the DIP Order, as well as the legal fees and expenses of the Lender. *See DIP Order,* ¶¶ 1, 3. |
| Interest Rate<br>*Bankruptcy Rule 4001(c)(1)(B)* | Interest will accrue at the rate of 10% per annum. *See DIP Order,* ¶ 1. |
| Collateral and Priority<br>*Bankruptcy Rule 4001(c)(1)(B)(ii);*<br>*Local Rule 4001-2(a)(4)* | Pursuant to Bankruptcy Code §§ 362, 363(c) and 363(e), as security for the Post-Petition Claim, the Debtor grants the Lender a valid, binding and enforceable lien, mortgage and/or security interest (a "Lien", and as so granted to the Lien, the "Post-Petition Lien") in all of the Debtor's presently owned or hereafter acquired property and assets, including without limitation the real property and improvements located at 143 and 159 Classon Avenue, Brooklyn, New York, whether such property and assets were acquired by the Debtor before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and the proceeds and products thereof (collectively, the "Collateral", and to the extent acquired after the Petition Date, the "Post-Petition Collateral"), which Post-Petition Collateral shall include causes of action brought pursuant to Bankruptcy Code §§ 544, 547, 548, 549, 550 and 553 and recoveries upon such causes of action (it being recognized that such actions and recoveries secure only the Post-Petition Claim). **The Post-Petition Lien is junior in priority and subordinate only to the existing mortgages, liens and security interests of Classon with respect to the Pre-Petition Secured Claim and any other valid,** |

---

[1] This concise statement is qualified in its entirety by reference to the applicable provisions of the DIP Order. To the extent there exists any inconsistency between this concise statement and the provisions of the DIP Order, the provisions of the DIP Order shall control.

| | |
|---|---|
| | **existing liens on the Properties.** The Post-Petition Lien shall be subject to the Carve-Out (as defined below). *See DIP Order, ¶ 2.* |
| Adequate Protection<br>*Bankruptcy Rule 4001(c)(i)(B)(v); Local Rule 4001-2(a)(5)* | As adequate protection for any post-petition diminution in value of the Classon's interests in the Pre-Petition Collateral, including without limitation diminution that is caused by the Debtor's use of the Pre-Petition Collateral and/or Cash Collateral, Classon is granted a post-petition claim only to the extent of any such diminution (the "Adequate Protection Claim") against the Debtor's estate. The Adequate Protection Claim, together with any and all post-petition indebtedness and/or obligations of the Debtor to Lender arising under the DIP Financing Documents including all fees and interest (the "Post-Petition Obligations", and together with the Adequate Protection Claim, the "Post-Petition Claim"), shall be allowed administrative expenses of the Debtor's estate which shall have priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the Debtor and over all administrative expenses or charges against property arising in the Debtor's Chapter 11 case, including without limitation those specified in Bankruptcy Code §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 1113 or 1114, subject only to the Carve-Out (as defined below). *See DIP Order, ¶ 2.* |
| Carve-Out<br>*Local Rule 4001-2(a)(5)* | The Debtor may use the Collateral to pay (the following, collectively, the "Carve-Out") (a) the statutory fees of the United States Trustee pursuant to 28 U.S.C. § 1930(a) and any unpaid fees due and owing to the Clerk of the Court, and (b) the allowed fees and expenses of the professionals retained by the Debtor (the "Debtor's Professionals") whose retentions are approved pursuant to final orders of the Court in an aggregate amount not to exceed $200,000 (the "Debtor's Professionals' Fee Cap"); provided, however, that Collateral shall only be used to pay the Carve-Out to the extent the Debtor does not have sufficient unencumbered funds available to satisfy the Carve-Out amounts. The Debtor shall be permitted to pay compensation and make reimbursement of expenses allowed pursuant to Bankruptcy Code §§ 330 and 331 to the Debtor's Professionals to the extent set forth in the Budget, provided however that all amounts so paid to the Debtor's Professionals shall reduce the Debtor's Professionals' Fee Cap on a dollar-for-dollar basis. Any amounts paid from the Collateral or the proceeds thereof, or funded by the Lender, with respect to the Carve-Out shall be Post-Petition Obligations. *See DIP Order, ¶ 3.* |
| Events of Default<br>*Bankruptcy Rule 4001(c)(1)(B); Local Rule 4001- 2(a)(10)* | Each of the following shall constitute an "Event of Default":<br>a.    the Debtor expends any funds or monies for any purpose other than those set forth on the Budget, or the Debtor expends any funds or monies in excess of the amounts authorized in the Budget;<br>b.    the occurrence of a material adverse change from and after the Petition Date;<br>c.    the Debtor shall fail to meet any of the Milestones (as defined below); |

d.    the Debtor shall terminate or fail to maintain the employment of Avery Laub, or another individual acceptable to Classon, as the Debtor's independent Chief Restructuring Officer;

e.    any material and/or intentional misrepresentation by the Debtor in any financial reporting or certifications to be provided by the Debtor to Lender;

f.    non-compliance or default by the Debtor with any of the terms and provisions of this Order; provided, however, that said non-compliance or default shall not be deemed an Event of Default if curable and cured by the Debtor within three (3) business days after notice of such non-compliance or default is given to the Debtor by Classon and/or Classon Estates V.

**Remedies of Classon upon Occurrence of Event of Default**. Upon the occurrence of an Event of Default and the giving written notice thereof by Classon and/or Lender to counsel to the Debtor and the U.S. Trustee (which notice may be given by any manner of electronic transmission, the automatic stay being deemed lifted for such purpose) (the "Default Notice"):

a.    Classon and Lender shall have the right, free of the restrictions of Bankruptcy Code § 362 or under any other section of the Bankruptcy Code or applicable law or rule, to take immediate reasonable action to protect the Collateral from harm, theft and/or dissipation;

b.    Classon and Lender shall have no obligation to make any further loans, advances and/or other financial accommodations to the Debtor;

c.    the Debtor and the U.S. Trustee shall have seven (7) calendar days from the receipt of the Default Notice (the "Remedy Notice Period") to obtain an order of the Court continuing its authorized use of the Collateral, including without limitation Cash Collateral, on a non-consensual basis notwithstanding the occurrence of the Events(s) of Default specified in the Default Notice (a "Non-Consensual Use"), provided that a Non-Consensual Use may be sought solely on grounds of the non-occurrence or timely cure of the Event of Default specified in the Default Notice;

d.    immediately upon expiration of the Remedy Notice Period, unless a Non-Consensual Use has timely been obtained from the Court, subject in all respects to the Carve-Out, the payment of any and all Obligations of the Debtor to Classon and Lender shall be due and payable, the Debtor's use of the Collateral (including without limitation Cash Collateral) pursuant to this Order and the Budget shall cease, Classon and Lender shall have the right, free of the restrictions of Bankruptcy Code § 362 or under any other section of the Bankruptcy Code, to exercise contractual, legal and equitable rights and remedies as to all or such part of the Collateral as Classon and Lender shall elect, including without limitation proceeding with the foreclosure sale against the properties located at 143 and 159 Classon Avenue, Brooklyn, New York, and Classon and Lender shall have the right, free of the restrictions of

| | |
|---|---|
| | Bankruptcy Code § 362 or any other section of the Bankruptcy Code, to impose an "administrative freeze" with respect to, and thereafter set off, the Debtor's cash on deposit at or within their control. *See DIP Order, ¶¶ 11-12.* |
| Deadline or Requirement for Sale of Property<br>*Local Rule 4001- 2(a)(12)* | The DIP Order contains the following milestones (the "Milestones"): Within five (5) business days of the execution of the asset purchase agreement (the "APA") to sell the Pre-Petition Collateral pursuant to section 363 of the Bankruptcy Code on terms and conditions acceptable to Classon, the Debtor shall prepare a motion, acceptable to Classon, to approve bidding procedures and the section 363 sale (the "Sale Motion"), which Sale Motion shall be filed within two business days of receipt of final comments, if any, from Classon and confirmation from Classon that the Sale Motion is reasonably acceptable. Debtor shall use best efforts to obtain a hearing date for the Sale Motion within thirty (30) days of its filing, subject to Bankruptcy Court availability.<br>    B.    Within thirty-five (35) days of the filing of the Sale Motion, the Bankruptcy Court shall enter an order approving the Sale Motion (the "Sale Order").<br>    C.    Within five (5) business days of the execution of the APA the Debtor shall provide drafts to Classon of: a disclosure statement (the "Disclosure Statement"), plan of reorganization of the Debtor (the "Plan") and a motion to approve the Disclosure Statement and schedule a hearing on confirmation of the Plan (the "DS/Plan Approval Motion"). Within two (2) business days after receiving from Classon comments to the Plan, Disclosure Statement and DS/Plan Approval Motion and confirmation from Classon that such documents are reasonably acceptable, the Debtors shall file each document with the Court.<br>    D.    The order approving the Disclosure Statement shall be entered by the Bankruptcy Court within forty (40) days of the filing of the Disclosure Statement Motion.<br>    E.    The order confirming the Plan shall be entered by the Bankruptcy Court within forty five (45) days of the entry of the order approving the Disclosure Statement.<br>    F.    The Effective Date of the Plan shall occur within fifteen (15) days of the entry of the Confirmation Order. *See DIP Order, ¶ 11, Exhibit B.* |
| Automatic Stay<br>*Fed. R. Bankr. P. 4001(c)(1)(B)(iv)* | Lender may exercise remedies upon the occurrence and during the continuance of any Event of Default notwithstanding the provisions of Section 362 of the Bankruptcy Code. *See DIP Order, ¶ 12.* |
| Debtor's Waivers and Releases and Third Party Challenges<br>Local Rule 4001-2(f) | (a) The Debtor's acknowledgments with respect to the Pre-Petition Collateral shall be binding upon the Debtor in all circumstances, (b) the validity, extent, priority, perfection, enforceability and non-avoidability of the pre-petition claims against the Debtor held by Classon and/or pre-petition liens and security interests shall not be subject to challenge by the Debtor, (c) the Debtor shall not seek to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer |

| | |
|---|---|
| | made by or on behalf of the Debtor to or for the benefit of Classon (or its predecessors in interest) prior to the Petition Date, and (d) the Debtor hereby releases and waives all defenses, affirmative defenses, counterclaims, claims, causes of action, recoupments, setoffs or other rights that it may have to contest (1) any Defaults or Events of Default (as defined in the pre-petition agreements between the Debtor and CPC/Classon), which were or could have been declared by CPC or Classon as of the Petition Date, (2) any provisions of the pre-petition agreements between the Debtor and CPC/Classon, (3) the amount of the indebtedness due to CPC/Classon as of the Petition Date and/or the value of the Collateral on the Petition Date, or (4) the conduct of CPC or Classon and their respective successors, assigns, affiliates, members, directors, officers, employees, agents, attorneys and other professionals (collectively, the "CPC/Classon Parties") in administering the pre-petition business relationship among the Debtor and CPC/Classon, including without limitation "equitable subordination," "lender liability," and/or "deepening insolvency" claims and causes of action. Classon and Classon Estates V shall have no carve-out, surcharge, or similar obligations to the Debtor or to any of the Debtor's retained professionals with respect to any investigation or litigation (whether threatened or pending) by the Debtor with respect to any matter released, waived or specified as not subject to challenge by the Debtor. The Debtor and its members shall dismiss, with prejudice, the lawsuit pending in the New York State Supreme Court, Rockland County, captioned Park Side Estates, LLC, et al. v. Community Preservation Corporation, Index No. 035812/2012.<br><br>Third-Party Challenges. Notwithstanding the Debtor's release and waiver, any party in interest, including any Committee appointed in this case, shall have 45 days from the entry of the final order to commence an adversary proceeding against any of the CPC/Classon Parties for the purpose (collectively, a "Challenge") of (1) challenging the validity, extent, priority, perfection, enforceability and non-avoidability of CPC/Classon's pre-petition claims against the Debtor and/or liens and security interests, (2) seeking to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtor to or for the benefit of CPC/Classon prior to the Petition Date, and/or (3) seeking damages or equitable relief against CPC/Classon arising from or related to the pre-petition business relationship among the Debtor and CPC/Classon, including without limitation "equitable subordination", "lender liability" and/or "deepening insolvency" claims and causes of action. |

## **KEY PROVISIONS**

14. As a condition to obtaining the proposed financing, the DIP Lender has required, and the Debtor has agreed to, certain provisions that may be considered "key provisions" to be highlighted to the Court. These provisions include the following:

   a. **Avoidance Actions**. Subject to the entry of the Final Order, the Lender shall be granted a perfected first priority lien on the proceeds of any avoidance claims or causes of action under chapter 5 of the Bankruptcy Code, pursuant to section 364(c)(2) of the Bankruptcy Code solely to perfect the Post-Petition Claim (it being recognized that such actions and recoveries secure only the Post-Petition Claim).

   b. **Disposition of Collateral.** The Debtor and any successors to the Debtor, including without limitation any successor trustee, must assign or direct to Classon and the Lender any and all Proceeds (as defined in the DIP Order) realized in any Disposition (as defined in the DIP Order), and immediately deliver any and all such Proceeds which come into their possession to Classon and the Lender in the form received. Classon and the Lender are authorized, notwithstanding the provisions of Bankruptcy Code § 362, to retain and apply all Proceeds obtained or received as follows: (a) the Proceeds of the Post-Petition Collateral shall be applied first to the repayment of the Post-Petition Claim, including without limitation interest and expenses accrued with respect thereto, and thereafter to the repayment of the Pre-Petition Obligations, and (b) the Proceeds of the Pre-Petition Collateral shall be applied to the repayment of the Pre-Petition Obligations, in accordance with the priority of the Post-Petition Lien set forth above and without prejudice to the rights of any third party with respect to the allocated Proceeds of any Disposition of Collateral encumbered by a Lien granted to or in favor of such third party.

   c. **Section 506(c) Waiver**. Such applications of Proceeds shall be free and clear of any claim, charge, assessment or other liability including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, Bankruptcy Code §§ 506(c) or 552(b).

   d. **Equitable Waiver**. Classon and the Lender shall not be subject to the equitable doctrines of "marshaling" or any similar claim or doctrine with respect to any Collateral.

## ARGUMENT

I. **The Debtor's Efforts to Obtain Financing.**

15. The Debtor does not have any available source of funds other than the proposed DIP Financing to carry on the operation of its business. The Debtor requires working capital to pay for the cost of the chapter 11 proceeding and preserve and safeguard the Properties so as to be in a position to market and sell the Properties, subject to bankruptcy court approval, as soon as practicable. Classon and Lender are only prepared to work with the Debtor to finance the Debtor's chapter 11 case by the DIP Financing on a junior lien, super-priority basis, subject to the Carve Out, and thereafter are committed to funding a consensual plan of reorganization which will provide for approval of a 363 sale of the Properties; the assumption of various mortgage loan participation agreement, option agreements and occupant's agreements with certain occupants of 143 Classon Avenue so as to allow those occupants to exercise their options and close on condominium units at the Properties if and when they have been approved for sale; and the payment of administrative expenses including payment of professional and United States Trustee fees.

16. The Debtor's ability to function while in chapter 11 and secure and safeguard the Properties and be in a position to seek to sell the Properties is dependent on its ability to obtain the advances made available under the DIP Financing. In light of the foregoing, the Debtor has determined, in the exercise of its sound business judgment, that the advances are critical to its ongoing operations and its ability to market and sell the Properties and confirm a plan of reorganization or liquidation.

17. Prior to the Petition Date, the Debtor's relationship with CPC, its then secured creditor, had deteriorated to the point of CPC commencing the Foreclosure Proceeding and obtaining entry of a judgment of foreclosure. Since the Petition Date,

without any income stream, the Debtor has been unable to procure financing from a new lender. Once Classon succeeded CPC, the Debtor and Classon were able to reach the terms of a global resolution of the entire chapter 11 case which includes the DIP Financing proposed in this Motion by Lender. The Debtor has concluded that the DIP Financing offered by Lender presents the best, most practical and in reality only option available and will enable the Debtor to preserve the value of the Properties, its sole asset. The proposal addresses the Debtor's working capital and liquidity needs to function while in chapter 11 and will result in sufficient funding to provide security at the Properties and safeguard the Properties until a sale is authorized and approved.

18. The proposed DIP Financing is critical for the Debtor to operate and maintain the Properties, and therefore vital to any sale and/or proposed plan scenario.

19. Once Classon became the holder by assignment of the Mortgages, the Debtor engaged in good-faith and extensive, arm's-length negotiations with Classon. These negotiations culminated in an agreement by Classon, through its affiliated Lender, to advance, subject to this Court's authorization, the funds necessary to operate, including securing and safeguarding the Properties and maintaining the Debtor and Classon's interest in the Properties in the aggregate amount of up to $300,000. The DIP Financing benefits both the Debtor and Classon by protecting the Debtor's sole asset, the Properties, and preserving them so that the Debtor may market and sell the Properties, subject to this Court's approval, on an expedited basis. The terms of the DIP Financing are as follows:

- **Amount:** up to $300,000.
- **Interest:** Interest will accrue at the rate of 10% per annum.
- **Origination Fee:** 2%.

- **Term**: Repayment of the advances and any accrued interest thereon will be due on the earlier of (1) the effective date of any plan of reorganization or liquidation; or (2) September 30, 2013.

20. The Debtor was unable to procure alternative financing sources on reasonable terms. In these circumstances, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986).

21. A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of Section 364(c) and (d). *Id.*; *see also In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). Where there are few lenders likely to be able and willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd*, 99 B.R. 117 (N.D. Ga. 1989). Alternative credit on more favorable terms was unavailable to this Debtor under these circumstances.

## II. The Proposed DIP Financing Arrangement Should be Authorized.

22. The Debtor's ability to safeguard the Properties and be in a position to propose a sale of the Properties and a confirmable plan of liquidation or reorganization can be satisfied only if the Debtor is authorized to borrow the advances from Lender.

## III. Approval Under Section 364(c) of the Bankruptcy Code.

23. The Debtor proposes to obtain the DIP Financing and Lender is willing to fund the advances only if the Debtor provides Lender (1) with an allowed super priority administrative claim pursuant to Section 364(c)(1), which claim will have priority in right

of payment over any and all other administrative expenses or priority claims of the kind specified in Sections 503(b) or 507(b); provided, however, the superpriority claim shall be subordinate to Debtor's professional's fees up to $200,000 and the fees payable to the Office of the United States Trustee; and (2) a junior lien in the Properties (junior to Classon's existing senior Mortgages against the Properties and any valid, existing liens on the Properties).

IV.   **Application of the Business Judgment Standard.**

24.   As described above, after appropriate investigation and analysis and given the exigencies of the circumstances, the Debtor's management has concluded that the DIP Financing is the only alternative available in the circumstances of this case. Bankruptcy courts routinely defer to the debtor's business judgment on most business decisions, including the decision to borrow money. *See Grp. of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); *In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same). "More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

25.   In general, a bankruptcy court should defer to a debtor's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *In re Curlew Valley Assoc.*, 14 B.R. 506, 511–13 (Bankr. D. Utah 1981). Courts generally will not second-guess a debtor's business decisions when

13-22198-rdd    Doc 58    Filed 06/26/13    Entered 06/26/13 17:45:54    Main Document
Pg 16 of 19

those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the Code." *Id.* at 513–14 (footnotes omitted).

26. The Debtor has exercised sound business judgment in determining that the DIP Financing is necessary and appropriate and has satisfied the legal prerequisites to borrow the advances through the DIP Financing. The terms of the DIP Financing are fair and reasonable and are in the best interests of the Debtor's estate. Accordingly, the Debtor respectfully requests that the Court grant it authority to obtain the DIP Financing from Lender on an administrative superpriority basis, subject to the Carve Out, and granting Lender a junior lien in the Properties, pursuant to Section 364(c) of the Bankruptcy Code.

27. Without the DIP Financing, the Debtor will be unable to protect and safeguard the Properties which is necessary for it to be able to sell the Properties and propose its plan. The Debtor has exercised its best business judgment in negotiating the DIP Financing that is presently before the Court.

## V. **The DIP Facility is Necessary to Effectively Preserve the Assets of the Debtor's Estate and to Operate Its Business.**

28. No party in interest can seriously contend that the Debtor does not need immediate access to a modest working capital facility. As with most other businesses, the Debtor has cash needs. In this circumstance, the Debtor requires access to funds to operate and properly protect the Properties. The DIP Financing is therefore critical to the Debtor, its estate and creditors. In the absence of the DIP Financing, the Debtor has no ability to fund the necessary security required at the Properties which would cause

{00630656.DOC;2 }
435896/002-4195501.3

16

irreparable damage to the Debtor's estate and seriously impair the Debtor's prospects for reorganization. For these reasons, the Debtor respectfully submits that access to the DIP Financing is critical.

## VI. The Terms of the DIP Facility Are Fair, Reasonable, and Appropriate and Provide Adequate Protection to Existing Lienholders.

29.    The proposed terms of the DIP Financing are fair, reasonable and adequate in that these terms neither (a) tilt the conduct of this case and prejudice the powers and rights that the Bankruptcy Code confers for the benefit of all creditors, nor (b) prevent motions by parties in interest from being decided on their merits. The purpose of the DIP Financing is to enable the Debtor to meet ongoing operational expenses.

30.    The terms and conditions of the proposed financing are fair and reasonable, and were negotiated by the parties in good faith and at an arm's-length. Accordingly, Lender should be accorded the benefits of Section 364(e) of the Bankruptcy Code.

### NOTICE

31.    Notice of this Supplemental Motion and all exhibits referenced herein are being provided to counsel to CPC, counsel to Classon, the Office of the United States Trustee, all parties having filed notices of appearance, all entities and individuals who are set forth in the Debtor's schedules D,E and F and parties who have filed proofs of claim in the Debtor's case.

**WHEREFORE**, the Debtor respectfully requests that the Court enter the Final Financing Order approving the DIP Financing and grant the Debtor such other and further relief as is just and proper.

**DATED:** New York, New York
June 26, 2013

                **ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.**

                By: /s/ A/ Mitchell Greene
                **A Mitchell Greene**
                *Attorneys for the Debtor*
                875 Third Avenue
                New York, New York 10022
                (212) 603-6300

**Classon Estates**
**DIP Budget**
As of: May 17, 2013

| Start Date | | 1 W/E 5/25/13 | 2 W/E 6/1/13 | 3 W/E 6/8/13 | 4 W/E 6/15/13 | 5 W/E 6/22/13 | 6 W/E 6/29/13 | 7 W/E 7/6/13 | 8 W/E 7/13/13 | 9 W/E 7/20/13 | 10 W/E 7/27/13 | 11 W/E 8/3/13 | 12 W/E 8/10/13 | 13 W/E 8/17/13 | 13 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Advertising (363) | 4,500 | | | 5,000.00 | | | | | | | | | | | 5,000.00 |
| CRO | 3,000 | | | | | 3,000.00 | | | | 3,000.00 | | | | 3,000.00 | 9,000.00 |
| Legal | 200,000 | | | | | | | | | | | | | 200,000.00 | 200,000.00 |
| Miscellaneous | 5,000 T | | | | 1,000.00 | | | | 1,000.00 | | | | 1,000.00 | | 3,000.00 |
| Real Estate Taxes | 18,000 (a) | | | | | | 18,000.00 | | | | | | | | 18,000.00 |
| Receiver | 7,000 | | | | | 7,000.00 | | | | | | | | | 7,000.00 |
| Security | 2,250 W | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 | 29,250.00 |
| US Trustee Fees | | | | | | | | | | | | | | 7,500.00 | 7,500.00 |
| Total Expenses | | 2,250.00 | 2,250.00 | 7,250.00 | 3,250.00 | 12,250.00 | 20,250.00 | 2,250.00 | 3,250.00 | 5,250.00 | 2,250.00 | 2,250.00 | 3,250.00 | 212,750.00 | 278,750.00 |
| Financing Costs | | | | | | | | | | | | | | | |
| Origination | 2% | 6,000.00 | | | | | | | | | | | | | 6,000.00 |
| Interest | 0% | 576.92 | 576.92 | 576.92 | 576.92 | 576.92 | 576.92 | 576.92 | 576.92 | 576.92 | 576.92 | 576.92 | 576.92 | 576.92 | 7,500.00 |
| Total Financing | | 6,576.92 | 576.92 | 576.92 | 576.92 | 576.92 | 576.92 | 576.92 | 576.92 | 576.92 | 576.92 | 576.92 | 576.92 | 576.92 | 13,500.00 |
| Net Cash Needs | | (8,826.92) | (2,826.92) | (7,826.92) | (3,826.92) | (12,826.92) | (20,826.92) | (2,826.92) | (3,826.92) | (5,826.92) | (2,826.92) | (2,826.92) | (3,826.92) | (213,326.92) | (292,250.00) |
| Contingency | 5% | | | | | | | | | | | | | | - |
| Cumulative | | (8,826.92) | (11,653.85) | (19,480.77) | (23,307.69) | (36,134.62) | (56,961.54) | (59,788.46) | (63,615.38) | (69,442.31) | (72,269.23) | (75,096.15) | (78,923.08) | (292,250.00) | (292,250.00) |

(a) The DIP Loan may be increased to include additional Real Estate taxes that become due during the DIP period.

| | |
|---|---|
| DIP Loan | 300,000 |
| Interest Rate | 10% |